LAW OFFICES OF STEVE M. KALEBIC, P.C.
STEVE M. KALEBIC, ESQ. (SMK-9385)
167 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 853-1500 (phone)
(201) 646-1301 (fax)
SMK@kmlawgroup.com (email)
ATTORNEYS FOR PLAINTIFF, EDDY TURKIEH MIZRAHI

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDDY TURKIEH MIZRAHI, | |
| Plaintiff, | COMPLAINT AND JURY DEMAND |
| vs. | |
| | CIVIL ACTION NO. |
| CHECKOLITE INTERNATIONAL, INC. and LEON BIBI | |
| Defendants. | |

Plaintiff Eddy Turkieh Mizrahi ("Mizrahi"), by way of Complaint against Defendants Checkolite International, Inc. ("Checkolite") and Leon Bibi ("Bibi"), hereby alleges as follows:

### Nature of This Action

1.    This is an action to recover money damages arising from breach of contract, promissory estoppel and fraud based on: (a) Defendant Checkolite's failure to pay Plaintiff Mizrahi at least the sum of $154,024.35 in commissions (excusive of interest, costs and attorneys fees) in breach of the terms of a January 1, 2010 and a January 1, 2013 "Manufacturer's Sales Representative Agreement" ; (b) Checkolite 's further breach

of the January 1, 2010 and January 1, 2013 "Manufacturer's Sales Representative Agreement" in that Checkolite violated Mizrahi's contractual exclusive right to sell specified product manufactured by Checkolite in the described territory (Mexico), thus depriving Mizrahi of further commissions on sales through December 31, 2015, the precise amount of such damages must await the accounting demanded and trial; (c) Bibi's clear and unambiguous representations and promises to Mizrahi in or about May 2013 that Mizrahi would be paid $5,000.00 per week until all commissions under the "Manufacturer's Sales Representative Agreements," were paid in full, such representations and promises made and intended by Bibi to induce Mizrahi, and which Mizrahi reasonably relied upon, to forbear commencement of an proceedings to collect past due commissions; and (d) the fact that the representations and promises made by Bibi to Mizrahi to induce Mizrahi's forbearance of collection were knowingly false when made, and were made by Bibi with knowledge that Checkolite had no intention of paying Mizrahi the commissions due, but instead were made by Bibi to delay Mizrahi from seeking to collect money due and to buy time so as to  to redirect and fraudulently transfer Checkolite's assets beyond the reach of Checkolite's creditors, including Mizrahi.

## THE PARTIES

2.   Plaintiff Mizrahi is an individual and a citizen and resident of Mexico, with his business address located at Bosques De Radiatas #22-602, Col. Bosques De Las Lomas, Cuajimalpa Mexico D.F.C.P. 05120.

3. Defendant Checkolite is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 142 Charles Street, Jersey City, New Jersey 07307.

4. Defendant Bibi is and has in the past served as Chief Executive Officer of Checkolite and, upon information and belief, is an owner of Checkolite and, at all relevant times, was and is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

5. Jurisdiction is proper and is founded on diversity of citizenship under 28 U.S.C. 1332. This action involves a citizen of Mexico and a citizen and corporate entity of New Jersey. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this district under 28 U.S.C. 1391 as all Defendants are residents and/or business entities in the State of New Jersey.

## FACTUAL BACKGROUND

7. Mizrahi engages in the business of acting as a commissioned sales representative on behalf of manufacturers of consumer products, seeking to market and sell the manufacturers products to retailers located in and selling to end consumers in Mexico.

8. In particular, for a fee measured by an agreed contractual percentage of the "net sales price" of products sold and delivered by a manufacturer to retailer(s) in Mexico, Mizrahi acts to solicit, promote and solicit orders from existing and potential accounts within Mexico on behalf of manufacturers.

9. In or about 2010, Mizrahi was approached by Defendant Bibi, acting with authority on behalf of Checkolite, and was requested by Bibi to begin acting as Checkolite's exclusive sales representative in Mexico.

10. At the time, Checkolite was a manufacturer of and/or caused the manufacture of consumer products, including in particular, lamps and lighting fixtures.

11. In conjunction with such solicitation, Bibi advised Mizrahi that Checkolite had been selling it's products in Mexico, but Checkolite was not obtaining "good results" from its existing representative.

12. By Manufacturer's Sales Representative Agreement ("the Agreement") dated January 1, 2010 (Exhibit A hereto), Checkolite and Mizrahi agreed, inter alia, that (a) Mizrahi was appointed with the exclusive right to sell all products of Checkolite, as specified at Exhibit A of the Agreement, and to do so in the geographic and account specific territory i.e. (Mexico); (b) that Mizrahi had specified responsibilities, including the promoting, exploitation and expansion of both existing and potential accounts; (c) that, per Paragraphs 4 A-E of the Agreement, Mizrahi would receive, at the times and in the manner provided, commissions on the sales and collection monies for products sold in Mexico, at stated percentages based on "the net price of invoice"; and (d) that the Agreement would terminate December 31, 2012, although either party was given the right to terminate the agreement "with 120 days notice."

13. By Manufacturer's Sales Representative Agreement dated January 1, 2013 (Exhibit B hereto) (also "the Agreement"), Mizrahi was reappointed as Checkolite's exclusive sales representative in Mexico on fundamentally the same terms as before, except that the scope of Checkolite products to be sold, increased-i.e. additional products were added.

14. By the January 1, 2013 Manufacturer's Sales Representative Agreement (Exhibit B), the term of Mizrahi appointment was extended to December 31, 2015, but, unlike the initial

January 1, 2010 Agreement (Exhibit A hereto), the January 1, 2013 Agreement (Exhibit B) provided no right to the parties to terminate prior to exhaustion of the full term.

15. Mizrahi fully performed his duties under both the January 1, 2010 and January 1, 2013 Manufacturer's Sales Representative Agreements; and he substantially increased Checkolite's sale of its goods in Mexico from what such sales had been previously; and at no time was either Agreement terminated prior to their full term.

16. Although in November 2012 (just prior to the execution of the January 1, 2013 Agreement) (Exhibit B) Checkolite unsuccessfully requested that Mizrahi "reduce" his commission rate; and Checkolite was, at or about this time, dilatory in paying Mizrahi commissions due him, Checkolite continued to process orders placed on its behalf by Mizrahi with customers in Mexico; and it continued to ship orders to such customers, and to collect monies from such customers in Mexico as to which sales/collections Mizrahi was and is entitled to receive his contractual commissions.

17. In or about February 2013, in derogation of the express terms of both the January 1, 2010 and January 1, 2013 (which was now in full force) Agreements, Checkolite, through the actions of Bibi: (a) advised Mizrahi that one of it's customers in Mexico, the "Home Depot," was being "excluded" by Checkolite from Mizrahi's "territory"; (b) declined to pay Mizrahi the commissions then due him, despite, Mizrahi's demands for payment; (c) and threatened Mizrahi that Checkolite "might" open it's own sales office in Mexico.

18. As of February 2013, Mizrahi was owed the following amounts of money by Checkolite under the term of the two (2) Agreements: (a) as and for a December 2012 Commission Statement approved by Checkolite, the sum of $18,915.00; (b) as and for a

January 2013 Commission Statement approved by Checkolite, the additional sum of $26,482.81; and (c) as and for Orders as to which Checkolite received payment, upon information and belief, from Mexican customers in or about February 2013, the additional sum of $5,808.89; (d) as and for Orders Shipped by Checkolite to customers in Mexico, upon information and belief, but not yet paid by customers, the additional sum of $45,654.52; (e) as and for Orders, upon information and belief, awaiting shipment as of February 2013 the additional sum of $77,162.70 – for a total of commissions due $174,024.35 – of which $127,679.85 was for sales made by Mizrahi in 2012; and $46,344.50 for sales made by Mizrahi in 2013.

19. In light of Checkolite's continuing failure to pay Mizrahi, his attorneys, by letter dated March 22, 2013 wrote to Checkolite and demanded payment of the then balance due and the letter advised Checkolite that Mizrahi would commence appropriate proceedings to collect the balance due if the balance was not paid.

20. During April 2013, Bibi communicated with a representative of Mizrahi and requested that Mizrahi not commence proceedings to collect the debt, and Bibi promised Mizrahi that Mizrahi would receive Five Thousand Dollars ($5,000.00) per week until the full amount due from Checkolite was fully paid.

21. Bibi memorialized this promise of payment of Five Thousand Dollars ($5,000.00) per week via email to Mizrahi dated May 2, 2013.

22. Checkolite paid Mizrahi only the following sums on the following dates, via wire transfer: (2) May 6, 2013 - $5,000.00; (b) May 20, 2013 - $5,000.00; (c) May 24, 2013 - $5,000.00; (d) June 6, 2013 - $5,000.00.

23. After June 6, 2013, no further payments were received by Mizrahi from Checkolite.

24. As of June 6, 2013, the amount due Mizrahi as and for commissions due was upon information and belief the sum of $174,024.35 (based on Orders placed by customers in Mexico with Checkolite), less only the sum of Twenty Thousand Dollars ($20,000.00) paid as per above – for a then balance due of $154,024.35.

25. On or about August 1, 2013, Mizrahi commenced an Arbitration proceeding at the American Arbitration Association against Checkolite to recover monies due under the two (2) Manufacturer's Sales Representative Agreements.

26. At or about the same time as his filing of 2013 arbitration proceeding, Mizrahi received notice that Checkolite had been "acquired", and thereafter, further information that a third party had acquired Checkolite's assets from a secured party.

27. As Checkolite failed to answer or otherwise respond to the Arbitration and waived arbitration, Mizrahi withdrew his Demand for Arbitration.

## FIRST COUNT
(BREACH OF CONTRACT)

28. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 27 above as though set forth at length herein.

29. Pursuant to the terms of the term of the January 1, 2010 Manufacturer's Sales Representative Agreement (Exhibit A), there is due Mizrahi from Checkolite the sum of no less than $107,679.85, as and for commissions due and unpaid.

30. Pursuant to the terms of the January 1, 2013 Manufacturer's Sales Representative Agreement (Exhibit B) there is due Mizrahi from Checkolite the sum of no less than $46,344.50.

31. Despite due demand, Checkolite has failed and refused to pay Mizrahi the total sum of $154,024.35 due as commissions, and, as a consequence, Checkolite is in breach of the two (2) Manufacturer's Sales Representative Agreements.

32. As a direct and proximate cause of Checkolite's breach of contract, Mizrahi has suffered damage.

**SECOND COUNT**
(BREACH OF CONTRACT)

33. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 32 above as though set forth at length herein.

34. Upon information and belief: (a) Checkolite, in breach of the two (2) Manufacturer's Sales Representative Agreements, has sold directly to at least one (Sams Club/Mexico/Commercializadora Mexico Americana) or more customers in Mexico, in violation of the terms of Mizrahi's exclusive right of representation; (b) sold product to customers in Mexico for which Checkolite received payment therefore, both prior and/or subsequent to June 2013, and has failed to report such sales to Mizrahi and to pay Mizrahi commissions based thereon.

35. Mizrahi does not have and has not been provided access to Checkolite's financial statements and records; and/or sales records and/or accountants receivable ledgers and documents, relating to Checkolite's sale of goods to customers in Mexico.

36. As a result of such breach of contract, Mizrahi has been damaged and is entitled to (a) a full accounting of all amounts of products sold by Checkolite to customers in Mexico from January 1, 2010 to present and its collections thereon, and a judgment representing Mizrahi's percentage commission on all such sales/collections as may be disclosed by the accounting requested.

## THIRD COUNT
(Breach of Contract)

37. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 36 above as though set forth at length herein.

38. Pursuant to the terms of the term of the January 1, 2013 Manufacturer's Sales Representative Agreement (Exhibit B), it's term thereof ends December 31, 2015.

39. As a consequence of Checkolite's breach of that agreement, Mizrahi has been damaged through lost expectancy/consequential damages, i.e. the commissions he would have earned through December 31, 2015 but for Checkolite's breach and as a direct and proximate cause of Checkolite's breach.

## FOURTH COUNT
(ATTORNEYS FEES AND COSTS)

40. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 39 above as though set forth at length herein.

41. Pursuant to the terms of the terms of the Manufacturer's Sales Representative Agreements, the prevailing party to a suit is entitled to recover his actual and receivable attorney fees and costs.

42. As a consequence of Checkolite's breach, Mizrahi is entitled to recover his reasonable attorneys fees and cost of this action.

## FIFTH COUNT
(COMMON LAW FRAUD)

43. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 42 above as though set forth at length herein.

44. Upon information and belief, each Defendant, acting for his own benefit, made statements to Mizrahi, both oral and written that: (a) Mizrahi would receive Five

Thousand Dollars ($5,000.00) per week; (b) that such payments would continue until Checkolite's obligations to Mizrahi were fully satisfied.

45. Upon information and belief, these representations were made by Bibi with (a) full knowledge that Checkolite was in the process of and/or exploring and/or contemplating a fraudulent transfer of all its assets to a third party; (b) that Checkolite and Bibi had no intention of paying Mizrahi the full balance due him; (c) that such representations and promises were made to induce Mizrahi to forbear actions to collect the amounts due him.

46. The material misrepresentations knowingly made by Bibi, as above stated, fraudulently omitted material statements of fact about Defendants true intentions, which intentions were not to pay Mizrahi the sums due him, but rather, to cause him to forbear from seeking to collect a debt due him, and, during his delay, to allow Checkolite and/or Bibi to fraudulently redirect Checkolite's assets and place them beyond reach of Checkolite's creditors.

47. Bibi made the statements above with the intent and purpose to defraud Mizrahi, knowing that such statements were false and misleading and that Mizrahi would and did rely upon them in determining to forbear actions to collect.

48. As a direct and proximate result of the foregoing, Mizrahi has suffered damages.

## SIXTH COUNT
(PROMISSORY ESTOPPEL)

49. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 48 above as if repeated. herein.

50. Defendant Bibi statements, oral and/or written to Mizrahi, that Mizrahi would receive Five Thousand Dollars ($5,000.00) per week until the full balance due was paid,

10

was a clear and unambiguous promise by Bibi upon which Mizrahi reasonably relied to his detriment, and which were intended to induce Mizrahi to forbear efforts at collection while Bibi and Checkolite proceeded to seek to fraudulently transfer Checkolite's assets beyond the reach of creditors.

51.     Upon information and belief, Bibi directly benefited by the fraudulent transfers.

52.     As a consequence of the foregoing, Defendant is liable to Mizrahi for damages, and is equitably bound by the promises made and which Mizrahi justifiably relied upon.

## SEVENTH COUNT
(UNJUST ENRICHMENT)

53.     Mizrahi re-alleges each and every allegation of Paragraphs 1 to 52 above as if repeated herein.

54.     Mizrahi provided a benefit to Checkolite with the full expectation that Checkolite would pay such benefit.

55.     Mizrahi provided his services to Checkolite with Checkolite's full knowledge, consent and appreciation of the benefits being conferred.

56.     Checkolite has no reasonable basis to withhold payment for Mizrahi's services.

57.     Checkolite's failure to pay Mizrahi constitutes misconduct and reflects Checkolite's attempt to take advantage of Mizrahi.

58.     Checkolite will be unjustly enriched if its midconduct is permitted, if it is allowed to take advantages of Mizrahi and it is not required to fully compensate Mizrahi for the value of the services it received.

## EIGHTH COUNT
### (QUANTUM MERUIT)

59. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 58 above as if repeated herein.

60. Mizrahi sues Checkolite for the reasonable value of the services provided by Mizrahi to Checkolite as set forth herein.

61. Payment has been demanded and has not been made by Checkolite.

## NINTH COUNT
### (VIOLATION OF UNIFORM FRAUDULENT TRANSFER ACT)

62. Mizrahi re-alleges each and every allegation of Paragraphs 1 to 61 above as if repeated herein.

63. Checkolote claims it is insolvent, i.e., that it does not have the financial ability to pay its debts.

64. Upon information and belief, prior and/or subsequent to becoming insolvent, Checkolite paid Bibi and/or his related entities and individuals, compensation, distributions, bonuses and other payments to the detriment of Checkolite's creditors, including, but not limited to, Mizrahi.

65. In addition, upon information and belief, acting in concert with others, Checkolite and Bibi engineered the fraudulent transfer of Checkolite's assets to an entity known as Israeli Discount Bank and/or Enchante Lites, LLC. The transfer of assets rendered Checkolite insolvent.

66. Upon information and belief, all payments made to Bibi and the Enchante-related transfer of assets were not made for good and valuable consideration and were made with the intent to hinder, delay or defraud Mizrahi.

67. Upon information and belief, the foregoing payments and asset transfers left Checkolite insolvent and unable to pay creditors. The transfers were undertaken by Defendant with full knowledge and in deliberate disregard of Plaintiff's pre-existing creditor rights.

68. The afore-referenced conduct constitute fraudulent transfers as prohibited under the New Jersey Fraudulent Transfer Act ("NJUFTA"), N.J.S.A. 25:2-25 and as avoidable under N.J.S.A. 25:2-19.

69. As a direct and proximate result of Defendants' violation of the NJUFTA, Plaintiff has been cause to suffer and will in the future continue to suffer damages.

## TENTH COUNT
(CONSPIRACY TO VIOLATE NJUFTA)

70. Mizrahi re-alleges all allegations set forth at Paragraphs 1-69 as if set forth at length herein.

71. Defendants have conspired to violate the NJUFTA by agreeing to carry out the transactions complained of herein, which were designed to hinder, delay or defraud creditor Mizrahi. All Defendants knew and understood the general objectives of their scheme to hinder, delay or defraud creditor Mizrahi.

72. Upon information and belief, the fraudulent transfers were undertaken by Defendants in bad faith and the subject assets transferred with intentional disregard of their fair market value solely to disregard, hinder, delay and defraud Mizrahi all in violation of the NJUFTA.

73. As a direct and proximate result of Defendants' violation of the NJUFTA, Plaintiff has been caused to suffer and will in the future continue to suffer damages. Defendants are jointly and severally liable to Plaintiff.

WHEREFORE, Plaintiff Mizrahi seeks judgment against Defendants Checkolite and Bibi on the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Causes of actions for:

(a) Direct and Compensatory Damages, including those arising from the Breach of Contract and Fraud and Promissory Estoppel;

(b) Punitive Damages;

(c) Statutory Damages, including avoidance of all fraudulent transfers and the imposition of attachment and a constructive trust upon all transferees;

(d) Attorney fees and Costs and interest; and

(e) Such other relief as to this Court is just and proper

                                              LAW OFFICES OF STEVE M. KALEBIC, P.C.
ATTORNEYS FOR PLAINTIFF, EDDY TURKIEH MIZRAHI

By: s/Steve M. Kalebic
    Steve M. Kalebic, Esq.
    A Member of the Firm

Dated: December 23, 2014

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury against the Defendants on all counts.

                LAW OFFICES OF STEVE M. KALEBIC, P.C.
                ATTORNEYS FOR PLAINTIFF, EDDY TURKIEH MIZRAHI

By: s/Steve M. Kalebic
     Steve M. Kalebic, Esq.
     A Member of the Firm

Dated: December 23, 2014

S:\KALEBIC\MIZRAHI\Complaint.doc