UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------:x
:
EDDY TURKIEH MIZRAHI,
:
                       Plaintiff,
:        2:14-cv-007987-JLL-JAD
          - vs. -
:
CHECKOLITE INTERNATIONAL, INC. and      Return Date:  March 16, 2015
LEON BIBI,                        :

                  Defendants.     :

-------------------------------------------------------------:x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......……………………………………...……………………….....iii

INTRODUCTION…...……………….……………………………………………...1

FACTUAL BACKGROUND….....…………………………………………………..2

ARGUMENT...………………………………………………………………………3

I.    The Case Should Be Dismissed Because There is a Mandatory Arbitration
      Provision Requiring Arbitration of the Entire Dispute……………..………...…..3

      A.  There Exists a Valid Agreement to Arbitrate…………………....…...………..4

      B.  All Claims Alleged by Plaintiff are Subject to Arbitration……..……………..6

II.   The Fraud Claim Should Be Dismissed For Failure to State a Claim..…………..9

      A.  Plaintiff's Fraud Claim is Duplicative of its Contract Claims………..……....9

      B.  Plaintiff Fails to Plead Fraud With Particularity….…………………………10

III.  Plaintiff's Claims Against Leon Bibi Should Be Dismissed For Failure to
      State a Claim………………………………………………..…………………..…11

CONCLUSION...…………………………………………………………….………12

**TABLE OF AUTORITIES**

**CASES**

*Anselmo v. Univision Station Group, Inc.*, No. 92 Civ. 1471 (RLC),
1993 WL 17173 (S.D.N.Y. Jan. 15, 1993)……………………………..……………7

*Apex Maritime Co., Inc. v. OHM Enters., Inc.*, No. 10 Civ. 8119 (SAS),
2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011)……………………………....…………10

*Boro P. Health Mgmt. v. Boro for Health, LLC*, 39 Misc.3d 1229(A)
(N.Y. Sup. 2014)………………………………………………………….…….…..11

*C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*,
419 F.Supp.2d 419 (S.D.N.Y. 2005)……………………………………………...…9

*Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324 (S.D.N.Y. 2008)…………………7

*Childs v. Meadowlands Basketball Assocs.*, 954 F. Supp. 994 (D.N.J.
1997)………………………………………………………………………....3, 4, 6, 8

*DiGeronimo v. John Cullinane & Assoc.*, Civ. No. 08-4231 (WJM)
2008 WL 5109743 (D.N.J. Dec. 2, 2008)……………………………..……………….8

*Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union*, 956 F.
Supp. 1190 (D.N.J. 1997)……………………………………………………………3

*Frederico v. Home Depot,* 507 F.3d 188 (3d Cir. 2007)……………………..………………10

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840 (2d Cir. 1987),
*aff'd*, 970 F.2d 899 (3d Cir. 1992)……………………………………..………………6

*Great Western Mortg. Corp. v. Peacock,* 110 F.3d 222 (2d Cir. 1997)………...…………5

*Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764
(3d Cir. 2013)…………………………………………………………..……………4

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.3d 1149 (3d Cir. 1989)……………………………………………..…………8

*Kassin v. CompuCom, Inc.*, 2012 WL 893097 (D.N.J. Mar. 15, 2012)……………...…9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)………..4

*Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)…….…………….3-4

iii

*Mutual Benefit Life Ins. v. Zimmerman*, 783 F. Supp. 853 (D.N.J.)………...…………….6

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004)…………...………………4

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192
(3d Cir. 1993)……………………………………………………...………....4-5

*RCM Technologies, Inc. v. Brignik Tech., Inc.,* 137 F. Supp. 2d 550
(D.N.J. 2001)……………………………………………………..…………..4

*Sarbak v. Citigroup Global Markets, Inc.,* 354 F. Supp.2d 531 (D.N.J. 2004)…….…...5

*Somerset Consulting LLC v. United Capital Lenders, LLC,*
832 F. Supp.2d 474 (E.D. Pa. 2011)………………………………………………9

*Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d Cir. 2005)………………….…..3

## STATUTES AND OTHER

5A C. Wright & A. Miller, Federal Practice and Procedure § 1357
(2d ed.1990)………………………………………………………………………….5

Fed. R. Civ. P. 9(b)……………………………………………………………...10-11

Fed. R. Civ. P. 11(b)……………………………………………………………….11

Fed. R. Civ. P. 12(b)(6)…………………………………………………...……….4, 9

iv

## **INTRODUCTION**

This case is not properly before this Court because it involves claims that indisputably relate to two agreements, both of which were signed by the parties in this action, and both of which contain clear, mandatory arbitration provisions.   In light of the parties' unambiguous intent to arbitrate their disputes, and in light of the strong federal policy in favor of enforcing arbitration provisions, this case should be dismissed with prejudice.  If Plaintiff wishes to pursue litigation against Defendants, he may do so in the appropriate arbitral forum to which the parties agreed, but he should not be permitted to proceed against Defendants in this Court.

To the extent that this Court does not otherwise dismiss the case in favor of arbitration, Plaintiff's claim for "common law fraud" should be dismissed for failure to state a claim.  The fraud claim is nothing more than an attempt by Plaintiff to rephrase what is, in fact, a contract claim.  All that is alleged is that Defendants did not intend to make payments to Plaintiff, payments that were allegedly due pursuant only to the contracts.  Such allegations do not amount to fraud, and they also fail to comply with the Rule 9(b) heightened pleading standard for fraud.

Finally, all of Plaintiff's claims against individual defendant, Leon Bibi, must be dismissed.  The very heart of all of Plaintiff's claims are based upon the existence of and arise out of two contracts – entered into by the corporate defendant, Checkolite, but not by Mr. Bibi in his individual capacity.  Because each of Plaintiff's claims derives from the contracts, no action can lie against Mr. Bibi for those claims.

1

## FACTUAL BACKGROUND

Defendant Checkolite International, Inc. ("Checkolite," and, collectively with Mr. Bibi, "Defendants") was a company based in Jersey City, New Jersey that manufactured lighting fixtures that were distributed throughout the U.S., Mexico, and other regions. Checkolite was in business for 55 years until its bank financing was cut off in or around July 2013 due in part to the loss of a significant vendor relationship.

In January 2010, Checkolite and plaintiff Eddy Turkieh Mizrahi ("Plaintiff" or "Mizrahi") entered into a Manufacturer's Sales Representative Agreement that provided, *inter alia*, that Plaintiff would be a sales representative in Mexico for Checkolite and that he would earn commissions based upon the sale and collections he made in Mexico on behalf of Checkolite   (Compl. ¶ 12, Ex. A.)  A new, nearly identical agreement was signed on January 1, 2013.  (Compl. ¶ 13, Ex. B.)

According to Plaintiff, in February 2013, Defendant Checkolite was delinquent in making commission payments to Plaintiff, but a few months later agreed to pay him $5,000 per week until all payments were up to date.  (Compl. ¶¶ 19-21.)  Checkolite made weekly payments to Plaintiff, with the final payment coming on June 6, 2013, after which time Plaintiff maintains that no further payments were made.  (Compl. ¶ 22.)

Both of the agreements (together, "Agreements"), which Plaintiff attached to his Complaint, contain an arbitration provision providing that:

> Any controversy arising out of, or relating to, this contract or any modification or extension hereof, including any claim for damages or rescission, or both, shall be settled by arbitration in Rokonkoma [*sic*], New York in accordance with the rules then obtaining of the American Arbitration Association. . .

2

(Compl. Exs., A, ¶ 10, B, ¶ 10.)  Plaintiff, apparently mindful of the arbitration

provisions, commenced an arbitration proceeding against Checkolite on August 1, 2013

"to recover monies due under the two (2) Manufacturer's Sales Representative

Agreements."  (Compl. ¶ 25.)  He later voluntarily withdrew that arbitration demand.

(Compl. ¶ 27.)  He thereafter filed the instant lawsuit against Defendants in December

2014, and served Defendants with process on January 31, 2015.

## ARGUMENT

**I.    This Case Should Be Dismissed Because There is a Mandatory Arbitration
Provision Requiring Arbitration of the Entire Dispute.**

Federal law is clear that "there is a presumption in favor of arbitrability."  *Trippe*

*Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  Indeed, there is a long-

standing federal policy that favors the arbitration of disputes.  *Moses H. Cone Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "Federal law favors the arbitration of

disputes where the parties have so provided, especially within the context of labor

relations."  *Childs v. Meadowlands Basketball Assocs.*, 954 F. Supp. 994, 998 (D.N.J.

1997) (*citing Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union*, 956 F.

Supp. 1190 (D.N.J. 1997)).  Where, as here, there is a contract that contains an arbitration

provision, a presumption of arbitrability arises, which can only be overcome if a court

determines "with positive assurance that the clause does not cover the dispute at issue."

*Id*.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration, whether the problem at hand is the construction of the contract language

itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone,*

460 U.S. at 24; *RCM Technologies, Inc. v. Brignik Tech., Inc.,* 137 F. Supp. 2d 550, 552 (D.N.J. 2001).[1]

Thus, on a motion to compel arbitration, courts engage in a two-step inquiry considering: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Id.; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Childs*, 954 F. Supp. at 998. Moreover, the Third Circuit Court of Appeals and courts within this district have clarified that a motion to compel arbitration is properly analyzed under a Rule 12(b)(6) motion to dismiss for failure to state a claim standard (rather than a summary judgment standard) when the "affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint"). *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 773-774 (3d Cir. 2013); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004). Because there can be little question here that there is a valid agreement to arbitrate and that this dispute falls within the scope of that agreement, Defendants' motion to compel arbitration and dismiss the case should be granted.

## A. There Exists a Valid Agreement To Arbitrate.

The Agreements each contain a valid and mandatory arbitration provision. The Agreements were signed by Plaintiff and by Defendant Leon Bibi as CEO of Defendant Checkolite. Plaintiff attaches those Agreements to the Complaint, and thus, they form part of the Complaint and are properly considered in connection with this motion. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.

---

[1] There is a New York choice of law provision contained in the Agreements; however, federal law governs the question of arbitrability. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

4

1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.") (*citing* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990).)

The arbitration provision provides that:

> **Any controversy arising out of, or relating to, this contract or any modification or extension hereof, including any claim for damages or rescission, or both, shall be settled by arbitration in Rokonkoma [sic], New York in accordance with the rules then obtaining of the American Arbitration Association. . .**

(Compl., Ex. A ¶ 10, Ex. B, ¶ 10) (emphasis added).  Plaintiff acknowledges in his Complaint that his claims are subject to arbitration, yet asserts that Defendants somehow "waived" their right to arbitration because they did not answer the arbitration demand Plaintiff previously made at the American Arbitration Association ("AAA").  (Compl. ¶ 27.)  The fact is, as Plaintiff also states in the Complaint, Plaintiff chose to withdraw his arbitration demand of his own volition.  (Compl. ¶ 27.)  In no way have Defendants waived their arbitration rights.  "In federal courts, waiver under the FAA is not to be lightly inferred."  *Sarbak v. Citigroup Global Markets, Inc.,* 354 F. Supp.2d 531, 542 (D.N.J. 2004) (Linares, J.).  "A party waives its right to compel arbitration only in the following circumstances: 'when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown.'" *Id.* (citing *Great Western Mortg. Corp. v. Peacock,* 110 F.3d 222, 233 (2d Cir. 1997)).  Here, Defendants vigorously contest Plaintiff's attempt to avoid the arbitration clause and seek to enforce the arbitration provisions with this

5

motion.  In no way has Plaintiff been prejudiced due to Defendants' alleged non-response to the prior arbitration demand.

**B.   All Claims Alleged by Plaintiff Are Subject to Arbitration.**

Plaintiff asserts ten counts in his Complaint, including three breach of contract claims (Counts I, II, and III), a claim for attorneys fees and costs (Count IV), common law fraud (Count V), promissory estoppel (Count VI), unjust enrichment (Count VII), quantum meruit (Count VIII), violation of uniform fraudulent transfer act ("UFTA") (Count IX), and conspiracy to violate NJUFTA (Count X).

All of these claims are are subject to arbitration.  The plain language of the arbitration provision provides that "any controversy" "arising out of, or relating to" the contract "or any modification or extension hereof," including "any claim for damages" "shall be settled by arbitration . . ."  (Compl., Ex. A ¶ 10, Ex. B, ¶ 10.)  There can be no legitimate argument that any of these claims fall outside of that scope.   Indeed, a reading of the Complaint as a whole makes it clear that the essence of this dispute is Plaintiff's attempt to recover money he believes he is owed precisely *because of* the existence of the contracts he signed with Defendants.

It is well-established that in analyzing whether a claim is subject to arbitration, the court must focus on the "factual allegations in the complaint rather than the legal causes of action asserted." *Childs*, 954 F. Supp. at 1000 (citing *Mutual Benefit Life Ins. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J.) (in turn quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir. 1987), *aff'd*, 970 F.2d 899 (3d Cir. 1992)).  All of the factual allegations in the Complaint relate to the premise that Plaintiff believes he is entitled to money pursuant to the Agreements.

6

The three breach of contract claims and the attorneys' fee claim plainly "arise out of" the contracts at issue.  Plaintiff even cites to the language of the Agreements when asserting the factual bases for these claims.  (*See, e.g.*, Compl. ¶¶ 29, 30, 34, 38, 41.) There is no basis to assert they are not subject to arbitration.

The equitable claims asserted, including promissory estoppel, unjust enrichment and *quantum meruit* also arise out of the Agreements at issue.  These are claims seeking the recovery of money – money that Plaintiff believes he is owed only due to the existence of the Agreements pursuant to which he claims he performed work for Checkolite.  In each of the equitable claims, Plaintiff is doing nothing more than seeking payment for services he claims he rendered to Checkolite.  He alleges that he provided a "benefit" or "services" to Defendant Checkolite and that he expected Checkolite to "pay such benefit" or to pay the "balance due" to him, and he demanded "payment" from Checkolite but it was not made.  (Compl. ¶¶ 1, 17, 18, 19, 24, 50, 54-58, 60, 61.)  The amounts he claims are due based on the specific payment terms contained in the Agreements.  (Compl. ¶ 18) ("owed the following amounts of money by Checkolite under the term of the two (2) Agreements.")

There can be no legitimate argument that Plaintiff's equitable claims are not subject to arbitration.  Indeed, a party cannot avoid an obligation to arbitrate claims by simply rephrasing as an equitable or quasi-contractual claim what is in reality a contract claim.  *See, e.g., Cfirstclass Corp. v. Silverjet PLC*, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) ("[W]here the relationship between the parties is contractual, the pleading of alternative, non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation].") (citations omitted); *Anselmo v.*

*Univision Station Group, Inc.*, No. 92 Civ. 1471 (RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) ("A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship.")

The same is true for the fraud claim. Plaintiff's fraud claim indisputably relates to his assertion that Defendants failed to pay him money that he believes is due *precisely because of* the existence of the Agreements. (*See, e.g.*, Compl. ¶¶ 1, 17, 18, 19, 24 ("amount due" "as and for commissions due").) The factual allegations are that Defendants told Plaintiff they would make weekly payments to him until "Checkolite's obligations to Mizrahi were fully satisfied." (Compl. ¶ 44.) Plaintiff further alleges that Defendants had no intention of making the payments of the "amounts due him." (Compl. ¶ 45.) The "obligations" allegedly owed to Plaintiff, the "amounts due him," or his "commissions," are financial obligations that arose only under the Agreements. As such, Plaintiff's claim for damages, though styled as a "fraud" claim, in fact arises out of and/or "relates to" the contracts at issue, is plainly a "claim for damages," and, as such, must be arbitrated. (Compl., Ex. A ¶ 10, Ex. B, ¶ 10); *Childs*, 954 F. Supp. at 1000 (misrepresentation claim subject to arbitration where alleged promise to pay arose under the contract); *see also DiGeronimo v. John Cullinane & Assoc.*, Civ. No. 08-4231 (WJM) 2008 WL 5109743, *2-3 (D.N.J. Dec. 2, 2008) (finding that a claim of fraud other than one asserting that the arbitration provision was induced by fraud is subject to arbitration).

Plaintiff's claims for violation of the NJUFTA and conspiracy to violate the NJUFTA also are subject to arbitration because they also "relate to" the contracts at

8

issue.[2]  Plaintiff claims that Defendants made payments to third parties at a time just prior to Defendants becoming insolvent.  (Compl. ¶¶ 63-67.)  Because of that, Plaintiff contends that, as a "creditor," he suffered damages. (Compl., ¶¶ 69, 73).  The only damage that could logically be incurred by Plaintiff here is the loss of the money he believes he was entitled to *pursuant to the Agreements*.  Because the NJUFTA claims relate to Plaintiff's assertion that he is entitled to money from Defendants pursuant to the Agreements, the claims "shall be settled by arbitration."  (Compl., Ex. A ¶ 10, Ex. B, ¶ 10.)[3]

In light of the clear arbitration provision and because all claims are subject to arbitration, the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The exclusive forum for this dispute is arbitration with the AAA.  (Compl., Ex. A  ¶10, Ex. B, ¶ 10); *Somerset Consulting LLC v. United Capital Lenders, LLC*, 832 F. Supp.2d 474, 490 (E.D. Pa. 2011) (complaint dismissed and case closed when motion to compel arbitration was granted).

## II.    The Fraud Claim Should Be Dismissed For Failure to State a Claim.

### A.  Plaintiff's Fraud Claim Is Duplicative Of Its Contract Claims.

The law is settled that "[w]here, a party obligates itself to a payment of money, a representation concerning that party's ability to pay is indivisible from the contract."  *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419,

---

[2] Federal courts routinely enforce arbitration provisions where, as here, the claims are predicated on statutory rights.  *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.3d 1149, 1156 (3d Cir. 1989) ("duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights. . .").

[3] In addition, Plaintiff's NJUFTA claim asserted in Count IX cites to "NJSA 25:2-19." (Compl. ¶ 68.)  That statutory section was repealed in 1989 and cannot form the basis of a claim.  That portion of the claim should therefore be dismissed.

430 (S.D.N.Y. 2005) (dismissing fraudulent inducement claim as redundant of breach of contract claim); *see also Kassin v. CompuCom, Inc.*, 2012 WL 893097, at *3 (D.N.J. Mar. 15, 2012) (dismissing fraud claim as duplicative and meritless).

The predicate for Plaintiff's common law fraud claim in Count V of the Complaint is that Defendants "made statements to Mizrahi… that (a) Mizrahi would receive Five Thousand Dollars… per week; (b) that such payments would continue until Checkolite's obligations to Mizrahi were fully satisfied." (Compl. ¶ 44.) However, Checkolite's only "obligations" to Mizrahi were those that it had pursuant to the two Agreements. Any alleged "promise" to pay Plaintiff made by Checkolite would only have been a promise to perform under the contracts at issue. Accordingly, the basis for the alleged "fraud" in Plaintiff's claim is nothing more than a restatement of Plaintiffs' breach of contract claims in Counts I, II, and III, among others. For this separate reason, Count V should be dismissed.

### B. Plaintiff Fails To Plead Fraud With Particularity.

To state a claim for fraud under New Jersey law, a plaintiff must allege: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damage. *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). Fraud allegations are subject to the heightened pleading standard of Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[4]

---

[4] New York law is analogous to New Jersey law on this point. *See Apex Maritime Co., Inc. v. OHM Enters., Inc.*, No. 10 Civ. 8119 (SAS), 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011) (To state a fraud claim in New York, a plaintiff must allege "the defendant knowingly made a

Here, Plaintiff has provided no details concerning the allegation that Defendants intended not to perform, nor has Plaintiff provided sufficient details concerning the allegedly fraudulent speech that is necessary in order to meet the Rule 9(b) standard.  Plaintiff alleges that "[d]uring April 2013," "Bibi promised Mizrahi that Mizrahi would receive Five Thousand Dollars ($5,000.00) per week until the full amount due from Checkolite was fully paid."  (Compl. ¶ 20.)  Plaintiff then states – in conclusory fashion– that "Checkolite and Bibi had no intention of paying Mizrahi the full balance due to him" at the time such statements were made.  (Compl. ¶ 45.)  Plaintiff's only apparent support for this statement, however, is that the Defendants have not paid Plaintiff the amounts he has demanded.  But, "[m]erely establishing nonperformance fails to demonstrate a concurrent intent not to perform." *See Boro P. Health Mgmt. v. Boro for Health, LLC*, 39 Misc.3d 1229(A), at *7 (N.Y. Sup. 2014).  Because Plaintiff's fraud claim is lacking in particularity, it should be dismissed.[5]

### III.   Plaintiff's Claims Against Leon Bibi Should Be Dismissed For Failure to State a Claim.

In addition to asserting ten separate claims against Checkolite, the corporate entity that entered into the Agreements that form the heart of Plaintiff's claims, Plaintiff appears to seek judgment for the same ten claims against Checkolite's CEO, Leon Bibi.  (Compl. at 14 ("wherefore" clause).)  Mr. Bibi signed the Agreements only in his capacity as the CEO of Checkolite.  He is not a party to the Agreements, and hence, is not individually

---

false statement of material fact with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on that false statement to its detriment.")

[5] Defendants reserve their right to seek sanctions against Plaintiff pursuant to Rule 11 due to the fact that certain of the counts asserted, including the fraud allegations, are not being made in good faith and can only have been asserted improperly as a means to harass and increase the cost of litigation, and the claims have no evidentiary support whatsoever.  Fed. R. Civ. P. 11(b).

bound.  Because each of Plaintiff's claims is derived from the Agreements, no action can lie against Mr. Bibi individually.  Accordingly, all of Plaintiff's claims against individual defendant, Leon Bibi, must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant the motion to compel arbitration and dismiss this case with prejudice, and that it award such other relief as it deems appropriate.

Respectfully submitted,

___/s/ Anna Aguilar_____
Anna Aguilar
Lisa Bentley
Aguilar Bentley LLC
266 Harristown Road Ste. 306
Glen Rock, NJ 07452
201.857.3833
646.924.0599 (facsimile)
aaguilar@aguilarbentley.com
lbentley@aguilarbentley.com
*Attorneys for Defendants*

12