**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDDY TURKIEH MIZRAHI, | : | CIVIL ACTION NO. 14-7987 (JLL) |
| | : | |
| Plaintiff, | : | **O P I N I O N** |
| | : | |
| v. | : | |
| | : | |
| CHECKOLITE INTERNATIONAL, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**LINARES, District Judge**

The plaintiff asserts the following relevant claims against the defendant Israeli Discount Bank (hereinafter, "IDB"), and the defendants Enchante Lites, LLC and Enchante Accessories (collectively hereinafter, "the Enchante Defendants"): one claim for New Jersey Uniform Fraudulent Transfer Act (hereinafter, "NJUFTA") violations (designated by the plaintiff as the "Ninth Count"); one claim for conspiracy to commit NJUFTA violations (designated by the plaintiff as the "Tenth Count"); and one claim for common-law fraud (designated by the plaintiff as the "Eleventh Count"). (See dkt. 82 at 19–24.)[1]

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

IDB moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the Ninth Count, the Tenth Count, and the Eleventh Count. (See dkt. 84; dkt. 85 through dkt. 85-6; dkt. 94.) The Enchante Defendants separately move pursuant to Rule 12(b)(6) to dismiss the same claims. (See dkt. 88; dkt. 89; dkt. 89-1; dkt. 98.) The plaintiff opposes the two motions. (See dkt. 93; dkt. 93-1; dkt. 96.)

This Court will resolve the two motions upon a review of the papers and without conducting oral argument. See L.Civ.R. 78.1(b). This Court presumes that the parties are familiar with the factual context and the procedural history of this action, particularly because this Court has previously issued an Opinion resolving other motion practice in this action. (See dkt. 24; dkt. 25.) For the following reasons:

- both motions are denied; and

- all of the claims asserted in this action are referred to the United States

Bankruptcy Court for the District of New Jersey (hereinafter, "Bankruptcy Court").

## BACKGROUND

The following rendition of the facts is derived from this Court's previous Opinion in this case, from the plaintiff's third amended complaint, from the uncontested facts asserted by the parties, and from the docket for a proceeding for bankruptcy relief filed by the defendant Checkolite International, Inc. (hereinafter, "Checkolite") in Bankruptcy Court. (See dkt. 24; dkt. 82.) See In re Checkolite International, Inc., Bankr. D.N.J. No. 15-24827.

## I.      Sales Representative Agreement

Checkolite manufactured lamps and lighting fixtures, and then sold those products to retailers to sell.  The defendants Leon Bibi, Lawrence Bibi, and Reuben Bibi[2] owned Checkolite, and they served as Checkolite's officers.

Checkolite agreed in January 2010 to hire the plaintiff, who is a Mexican citizen, to be its exclusive sales representative in Mexico.  The terms of their agreement provided that the plaintiff would receive commissions, and that the plaintiff was to promote and expand Checkolite's accounts in Mexico.  (See dkt. 24 at 1–2.)

## II.     Factoring Agreement

In July 2010, Checkolite and IDB entered into a factoring agreement, under which IDB would advance money to Checkolite at various intervals.  In return, Checkolite granted IDB a continuing priority security interest and a general lien on Checkolite's receivables and other assets.

## III.    A Dispute Arises

In February 2013, Leon Bibi informed the plaintiff that a major client was to be removed from the plaintiff's exclusive territory, and he refused to pay the plaintiff the commissions that were owed at that point.  However, Leon Bibi asked the plaintiff to refrain from initiating legal proceedings to collect this debt provided that the plaintiff would be paid $5,000 a week until the debt was fulfilled, and the plaintiff agreed. When

---

[2]  The parties also spell the first name of this defendant as "Rueben."  However, it appears that the correct spelling is Reuben.

the plaintiff stopped receiving those weekly installments in June 2013, he attempted to institute an arbitration proceeding against Checkolite to recover the remaining commission balance of approximately $154,000.

## IV.    Checkolite Defaults under the Factoring Agreement

At about the same time when the plaintiff stopped receiving his weekly payments from Checkolite, Checkolite defaulted on its indebtedness under the factoring agreement with IDB in an amount approaching $3 million.  Checkolite then surrendered its assets to IDB on July 11, 2013.  On that same day, the Enchante Defendants purchased those assets from IDB for only $1,350,000.  Reuben Bibi is employed by the Enchante Defendants.

The plaintiff alleges that the aforementioned transactions were part of a scheme to facilitate the immediate and fraudulent transfer of Checkolite's assets and business records to the Enchante Defendants, in order to render Checkolite insolvent and to deprive the plaintiff of the commissions that were owed to him.  In addition, the plaintiff alleges that Checkolite's assets were sold for an amount that was less than their fair market value, and that IDB purposely did not seek other bidders for those assets in order to assure that the Enchante Defendants would receive them for the benefit of Reuben Bibi.

## V.    Legal Proceedings

The plaintiff brought this instant action in December 2014.  However, Checkolite filed a petition in Bankruptcy Court for bankruptcy relief in August 2015.  Checkolite lists the plaintiff as one of its creditors in the bankruptcy proceeding, and admits therein

that the plaintiff is owed approximately $154,000.

## LEGAL STANDARDS

**I.      Rule 12(b)(6)**

It is not necessary for the Court to restate the standard for resolving a motion made pursuant to Rule 12(b)(6) to dismiss a claim, because that standard has been already enunciated.  See Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 764–65 (3d Cir. 2013) (setting forth the standard; citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 209–12 (3d Cir. 2009) (setting forth the standard; citing Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

**II.     NJUFTA**

The NJUFTA states in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (2) Intended to incur, or believed or reasonably should have believed that the debtor

would incur, debts beyond the debtor's ability to
pay as they become due.

N.J.S.A. 25:2-25.

## DISCUSSION

### I.     Ninth Count, Tenth Count, and Eleventh Count

The plaintiff alleges in the Ninth Count and the Tenth Count, in relevant part, that
IDB and the Enchante Defendants violated the NJUFTA by taking part in a scheme to
render Checkolite insolvent by fraudulently transferring Checkolite's assets.  He alleges
that the goal of the scheme was, among other things, to deprive the plaintiff of his
commissions.  The plaintiff also alleges that an additional goal of the scheme was to
assure that Checkolite's assets would be transferred to Reuben Bibi's new employers,
which were the Enchante Defendants, in order to benefit Reuben Bibi.

IDB argues in support of its motion to dismiss that it cannot be held liable under
the NJUFTA because it is not a "debtor" covered by that statute, and that Checkolite is
the only debtor.  IDB further argues that the plaintiff has failed to allege a claim under the
NJUFTA with the requisite particularity.  (See dkt. 85-6.)  The Enchante Defendants, in a
brief that is essentially one page in length, adopts IDB's arguments and raises nothing
further for the Court to consider.  (See dkt. 89.)

The plaintiff argues in opposition that the NJUFTA has a broad reach that
encompasses the conduct of the parties that are not the debtors, such as IDB and the
Enchante Defendants in this case.  The plaintiff further argues that it has presented its

6

allegations of fraud with the requisite particularity to survive a motion to dismiss.  (See dkt. 93; dkt. 96.)

This Court rejects the arguments raised by IDB and the Enchante Defendants. First, it is well-settled law that liability can attach under the NJUFTA to a party that is not the debtor.  See Banco Popular v. Gandi, 184 N.J. 161, 177–78 (2005) (holding that a plaintiff may assert a claim under the NJUFTA against a non-debtor defendant who is alleged to have conspired or to have aided in facilitating a fraudulent transfer, and holding that the statute itself does not preclude such a related cause of action); see also Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu, No. 14-3362, 2015 WL 4317750, at *6 (D.N.J. July 14, 2015) (stating the same).  Therefore, IDB in its position as a lender and the Enchante Defendants in their positions as the beneficiaries of the asset transfer can still be held liable for allegedly participating in a scheme to violate the NJUFTA.  See Debiasa v. Donnelly, No. 16-552, 2016 WL 4620370, at *3–4 (D.N.J. Sept. 6, 2016) (holding that viable claims existed under the NJUFTA against a non-debtor defendant accused of allegedly assisting a debtor to conduct a fraudulent transfer); United Ass'n, Local Union No. 322 Pension Fund v. Schmidt, No. 10-1815, 2011 WL 766057, at *8–9 (D.N.J. Feb. 24, 2011) (holding that a claim under the NJUFTA against a non-debtor defendant survived, because the plaintiff plausibly alleged that there was an instance of constructive fraud when the debtor's assets were transferred at less than fair market value to an insider).

Second, the plaintiff asserts claims of fraud under the NJUFTA that are stated with sufficient particularity to advance beyond the stage of a motion to dismiss. Specifically, the plaintiff alleges that IDB facilitated the transfer of Checkolite's assets at less than fair market value in July 2013, in order to assist Checkolite in avoiding payment of its debt to the plaintiff and to ensure that only the Enchante Defendants would receive those assets for the benefit of Reuben Bibi. See Fed.R.Civ.P. 9(b); see also In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (stating that the purpose behind Rule 9(b) is to provide the accused defendants with the proper notice of the claims asserted against them). Whether these allegations would survive a motion for summary judgment must await further discovery. Therefore, the parts of the motions by IDB and by the Enchante Defendants that seek dismissal of the Ninth Count and the Tenth Count are denied.

IDB also seeks dismissal of the Eleventh Count, with the Enchante Defendants once again adopting the arguments of IDB. However, the Eleventh Count sets forth allegations in support of a claim for common-law fraud that mirror those set forth in the Ninth Count and in the Tenth Count. As a result, the Eleventh Count insofar as it is asserted against IDB and the Enchante Defendants must necessarily survive as well. See Fed.R.Civ.P. 9(b); Banco Popular, 184 N.J. at 177 (holding that "[t]o the extent that the facts undergirding a[n] [NJ]UFTA claim also establish other recognized causes of action, for example . . . common-law fraud, a creditor may pursue that claim as well"). Therefore, the parts of the motions filed by IDB and the Enchante Defendants that seek dismissal of the Eleventh Count are denied.

## II.     Referring All Claims to the Bankruptcy Court

The plaintiff's claims that are asserted against Checkolite in this Court are currently stayed due to Checkolite's Bankruptcy Court proceeding.  (See dkt. 33.)  The plaintiff's $154,000 debt is listed as an unsecured nonpriority claim therein, and the instant District Court action is listed in the statement of financial affairs in the bankruptcy petition.  See In re Checkolite International, Inc., dkt. 1 at 12, Schedule F; id., dkt. 1 at 17, Statement of Financial Affairs.  In addition, Reuben Bibi is listed on the bankruptcy petition as an officer and the 50% shareholder of Checkolite.  See In re Checkolite International, Inc., dkt. 1 at 22.  Furthermore, the bankruptcy claims register includes the plaintiff, and the plaintiff filed his proof of claim in November 2016 while the motions to dismiss filed by IDB and the Enchante Defendants were pending in the instant District Court action.  See In re Checkolite, Claims Register at 3.

This Court's review of the Bankruptcy Court's docket for the Checkolite bankruptcy proceeding reveals that it is being actively litigated.  Furthermore, the claims being asserted before this Court concerning the alleged fraudulent conduct underlying the transfer of Checkolite's assets are hopelessly intertwined with the issues concerning Checkolite's insolvency that are being addressed by the Bankruptcy Court.  Thus, in order to ensure consistent results and an efficient resolution, this Court will refer all of the claims asserted here to the Bankruptcy Court.  See 28 U.S.C. § 157(a) (stating that any cases arising in or related to a matter under Title 11 must be referred to a bankruptcy court); S.P. Richards Co. v. Arora, No. 13-7768, 2014 U.S. Dist. LEXIS 173537, at *1–3

(D.N.J. Dec. 15, 2014) (referring sua sponte all pending claims to Bankruptcy Court, including the claims asserted against a defendant who was not a petitioner in Bankruptcy Court); Ambalo v. 6830 Route 9 Grp., LLC, No. 12-1173, 2013 WL 85149, at *1–2 (D.N.J. Jan. 7, 2013) (referring sua sponte all pending claims to Bankruptcy Court, including the claims asserted against the defendants who were not petitioners in Bankruptcy Court). This type of referral to Bankruptcy Court is particularly appropriate because the plaintiff's allegations concerning the fraudulent transfer of assets from the party seeking bankruptcy relief, i.e., Checkolite, may have a significant impact on the administration of the bankruptcy estate. See Savoy Senior Hous. Corp. v. TRBC Ministries, LLC, 401 B.R. 589, 596–98 (S.D.N.Y. 2009) (referring the claims asserted against the defendants who were not bankruptcy petitioners, because the plaintiffs alleged fraud on the Bankruptcy Court and on themselves as participants in a related bankruptcy proceeding).[3]

The extent of the Bankruptcy Court's jurisdiction over the instant claims will depend upon whether these claims concern: (1) a core proceeding; or (2) a non-core proceeding, which is a proceeding that is otherwise related to an ongoing bankruptcy matter. See 28 U.S.C. § 157(b)(2)–(4); see also 28 U.S.C. § 157(b)(1) (stating that a bankruptcy court may enter an order and a judgment in a core proceeding); 28 U.S.C. §

---

[3] A referral to the Bankruptcy Court is also permitted pursuant to the Standing Order of Reference by the United States District Court for the District of New Jersey, dated July 23, 1984.

157(c)(1) (stating that a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court in a non-core proceeding, and a final order or judgment will then be entered by the district court after considering those findings and conclusions); see also In re Mullarkey, 536 F.3d 215, 220–21 (3d Cir. 2008) (discussing the jurisdiction of a bankruptcy court).

Upon this Court's referral, the Bankruptcy Court itself will determine the extent of that jurisdiction. See 28 U.S.C. § 157(b)(3) (stating that the bankruptcy court determines whether a matter is a core proceeding or a related-to proceeding); Certain Underwriters at Lloyd's of London v. Otlowski, No. 08-3998, 2009 WL 234957, at *2 (D.N.J. Jan. 29, 2009) (stating that "Section 157(b)(3) calls for the bankruptcy judge to make the initial decision on whether a case is a core proceeding, and its language is not ambiguous").

## CONCLUSION

The separate motions filed by IDB and the Enchante Defendants to dismiss the Ninth Count, the Tenth Count, and the Eleventh Count are denied. Furthermore, all of the claims in this action are referred to the Bankruptcy Court.

This Court will enter an appropriate order.

**JOSE L. LINARES**
United States District Judge

**Dated:** January ___10th___ , 2017

11